No. 2196.

I. LOVENBERG v. THE NATIONAL BANK OF TEXAS.

1. ASSIGNOR AND ASSIGNEE—ASSIGNMENT FOR BENEFIT OF CREDITORS— STATUTE CONSTRUED.—A bank, as creditor of an insolvent debtor, received an instrument in the nature of a chattel mortgage, made in violation of law, to secure its claim, and took forcible possession from an assignee, of goods transferred to him by the debtor by legal assignment for the benefit of creditors, but made after the chattel mortgage. The chattel mortgage having been decided by the supreme court to be in contravention of law regulating assignments, the bank thereupon filed with the assignee proof of its claim, but about eighteen months after the notice given by the assignee, who refused to accept it. The claim of the bank was twice the value of the assigned property. *Held:*

(1) Without deciding whether, under all circumstances, it is necessary for a creditor of an assignor to file a claim against him within six months after the publication of notice by the assignee, to entitle him to the benefit of an assignment, in this case the failure to do so was without excuse.

(2) The statute does not contemplate that the pendency of a suit by a creditor, which from its very nature, must leave a large portion of a creditor's claim due from the assignee, shall excuse him for awaiting the action of the courts indefinitely before proving up any portion of his claim.

(3) Though circumstances may surround a claim against an insolvent debtor who has assigned, making the precise sum due difficult of ascertainment, the law does not contemplate that a creditor shall stand excused for that cause, who fails to file his claim with the assignee within the time required by the assignment laws.

(4) If the bank was in possession of doubtful security, afforded by an instrument executed to it by the insolvent, and the construction of which was involved in litigation during the period within which the claim should have been filed, it could state that fact, and any other fact rendering the amount of the claim uncertain, and leave for adjustment between itself and the assignee, the amount which was due thereon.

(5) But when, as in this case, the bank was in possession of nearly all the insolvent's estate under an illegal transfer, and retained the same during a protracted suit prosecuted by it to defeat the assignment, and deprive the other creditors of their legal rights to pro rata payment, and only filed its claim with the assignee when defeated in its effort to perpetrate a wrong, and after the six months for filing claims had expired, the assignee acted properly in rejecting the claim.

(6) Valentine v. Decker, 43 Mo., 583, approved.

(7) No one can rely on his own wrong to excuse his delay in complying with the requisitions of the law.

(8) The bank was entitled to no portion of the assigned assets, thereby defeating garnisheeing creditors who might be entitled to any excess remaining after legally consenting creditors had been fully satisfied.

(9) The judgment was so reformed as to pay, *First,* The costs and expenses of the trust. *Second,* The claims of consenting creditors, except the bank, the full amount of their claims. *Third,* The claims of garnisheeing creditors who had appealed, and any remaining funds to be paid out under decree of the district court.

2. APPEAL—PRACTICE—JUDGMENT.—A garnisheeing creditor of an insolvent debtor, who had garnisheed the assignee of the debtor, afterwards also accepted the assignment and filed his verified claim, though too late. In a suit between the assignee, the garnishee, and other creditors, the garnishee appealed only from that portion of the judgment below which denied him the right to participate in the assignment, and decreed, that as to him the assignee go hence without day. In his pleading he had asked to be placed on an equality with other consenting creditors, and in the alternative that his claim be paid in full, after all accepting creditors, with the exception of appellee, had been satisfied. *Held:*

(1) The court by adjudging that the garnisheeing creditor had no right to partake of the assignment as a consenting creditor, and that the appellee had, refused the former every relief he had asked in his pleadings.

(2) If the garnisheeing creditor was entitled to be treated either as a consenting creditor or a garnisheeing creditor, and the appellee had no

right to any portion of the assigned property, then the judgment was, as against the former, erroneous.

## REHEARING.

3. JUDGMENT—APPEAL.—When in a suit involving the claims of a number of parties, judgment is rendered in favor of one and against another on one of the issues involved, and from that portion of the judgment the complaining party takes no appeal and assigns no error based on the judgment as to that issue, the judgment of the court below will be treated, in so far as it determined the particular issue, as final.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

*W. B. Denson,* for appellant Ghillain, on his proposition to the effect that the consent and filing of the claim of appellee was too late to entitle it to take under the assignment, cited Appendix to Acts of 1879, page 6, sections 5 and 7; 45 Iowa, 301, In re. Holt; 43 Missouri, 583, Valentine v. Decker; McKindley and others v. Nourse, 67 Iowa, 118.

*Robert G. Street, M. E. Kleberg* and *Labatt & Noble,* for appellant Lovenberg.

*McLemore & Campbell,* for the appellee, and *M. E. Kleberg,* for Lovenberg, assignee, cited Owens v. Ramsdell, 33 Ohio, 439; Lahm v. Johnston, 32 Ohio, 590; Fourth Edition of Barrell on Assignments, page 725, section 477; sections 5 and 7 of Assignment Act of 1879, chapter 53, page 57, Appendix to Revised Statutes of Texas, page 8.

WILLIE, CHIEF JUSTICE. On August 17, 1883, Carl Schwarz executed to I. Lovenberg an assignment of his property for the benefit of such of his creditors as would accept of its terms, and release the assignee from liability for their claims. Lovenberg took immediate possession of the assigned property, but was soon thereafter forcibly deprived of it by the agents of the appellee, who claimed the property under a written conveyance subsequently declared by this court to be a chattel mortgage executed in violation of the seventeenth section of the assignment law. Lovenberg sued to recover the value of the assigned property from the bank, and obtained a judgment in the district court, which was

subsequently affirmed by this court. The judgment recovered amounted to sixteen thousand nine hundred and fifty-four dollars and twenty cents, and bore interest at eight per cent from the date of the recovery.

The bank, within four months after the assignment, gave the assignee notice of its acceptance of its terms, but filed with him no proof of claim until March 24, 1885, about eighteen months after notice given by the assignee, and he refused to recognize it. This claim was for over thirty thousand dollars, and was the identical debt which the bank had sought to secure by the invalid chattel mortgage. Lewis Ghillain, a citizen of Belgium, having a claim against Schwartz before his assignment, did not accept within four months or make proof and file statement within six months after the assignment. On the nineteenth of January, 1885, Ghillain garnisheed the assignee for nineteen hundred and sixty-eight dollars and sixty-one cents, the amount of the judgment. On July 13, 1885, Ghillain presented to the assignee his written consent to accept the assignment, and his verified claim. The assignee refused to file it. Execution having been issued upon the judgment of the assignee against the bank, this suit was originally brought to enjoin it; but the money due on the execution was subsequently paid to the assignee, and held by him subject to the judgment of the court upon the rights of all persons interested in the fund, who made themselves parties to the suit in response to an amended petition filed by the appellee. These parties were the bank, claiming a pro rata dividend with other consenting creditors upon its entire claim; the appellant Ghillain, claiming to be admitted as a consenting creditor into a share of the fund, or in default thereof to be satisfied under his garnishment out of what might remain in the assignee's hands after paying creditors legally entitled to a portion of the fund by reason of having duly accepted the assignment and filed their claims; the appellant Mayer, and other parties who had sued out writs of garnishment and claimed the same rights as such as did the appellant Ghillain, but had never consented to the assignment; and the assignee, who disputed the claims of all these parties.

It was found by the court that the estate in the hands of the assignee was eighteen thousand three hundred and ninety-five dollars; that the assignee should be allowed for attorney's fees two thousand eight hundred dollars, for his own commissions fifteen hundred dollars; that eleven thousand dollars of debts had

been accepted and filed; that the appellee had, within four months after the assignment, given notice of its consent to the assignment, but had not proved up its claim within six months after the date of the same, but had continued to contend in the courts for the ownership of the property assigned; that the bank be allowed to share pro rata with other consenting creditors who had strictly pursued the statute in reference to their claims. The court however held that the amount of expense caused to the assignee by the suit with the bank should be charged to the latter as a part of its pro rata payment. Ghillain was not admitted as a consenting creditor, and neither he nor the other garnishing creditors received under the judgment anything by reason of their having sued out these writs.

From this judgment the assignee, as well as Ghillain and the other garnishing creditors, appealed, but Ghillain and Mayer alone appear as appellants in this court.

The appellee claims that Ghillain has not appealed from any other part of the judgment below except that which denies him the right to participate in the assignment, and decrees that as to him the assignee go hence without day, etc. This may be true, yet such a judgment decides against Ghillain every question raised by his pleadings. He asked that his judgment be placed upon an equality with the claims of other consenting creditors; and if not entitled to that relief, that his claim be paid in full, after all the accepting creditors, with the exception of the appellee, had been satisfied. The court adjudged that he had no right to partake of the assignment as a consenting creditor; that the appellee had this right; and, by giving judgment that the assignee as to him go hence without day and recover costs, it refused Ghillain every relief asked by his pleadings. If, therefore, Ghillain was entitled to be treated either as a consenting or as a garnishee creditor, and the appellee had no right to any portion of the assigned property, the judgment was erroneous and must be reversed.

Admitting for the purposes of this case, that Ghillain is not to be treated as a consenting creditor; that the assignee rightfully refused to receive either notice of his consent to the assignment or his verified claim, he is entitled to all the rights acquired by the issuance of his writ of garnishment and its service upon the assignee. This right would doubtless have been waived had the notice and claim been recognized by the assignee. Ghillain would then have become a consenting creditor; but when these

were rejected, he did not occupy that position.   He remained as he was before, a non-consenting creditor, with all the rights which that position accorded him.   One of them is granted by the eighth section of the statute, viz., to garnishee the assignee for any excess of the assigned estate remaining in his hands after the payment of consenting creditors the amount of their debts and the costs and expenses of executing the assignment. This course he had pursued, and had obtained all the benefits of a garnishing creditor as to that excess.   Whether there was any excess upon which the garnishment could take effect, depends upon whether the appellee was entitled to the rights of a consenting creditor as to the funds in the assignee's hands.   This is the important question in the case.   Within four months after publication of notice by the assignee, the appellee consented to accept under the assignment, but did not within six months after such publication file a verified statement of the nature and amount of its claim, as required by the seventh section of the statute.   This it delayed for a year after the six months had expired.   It will not be necessary for us to determine in this case whether it is essential, under all circumstances, to file a claim against the assignor within six months after the publication, to entitle it to the benefits of the assignment.   Admitting that under a proper state of facts a reasonable delay would not prejudice the claim, the question remains:  Was a sufficient excuse offered for the failure to file the appellee's claim within the time prescribed by statute?

The proof showed that the bank had taken from Schwarz an instrument in writing, in the nature of a chattel mortgage, to secure the said claim, and that subsequently Schwarz made the present assignment, including such of these goods as the bank had not converted to its own use, and had placed the assignee in possession of them; that the agents took forcible and illegal possession of the goods from the assignee, and that he brought suit against the bank to recover damages, and succeeded in obtaining a judgment in the district court for their value, which was affirmed by this court.   The instrument under which the bank claimed the goods was adjudged fraudulent and void, and in contravention of the statute regulating assignments for the benefit of creditors.

The defense of the suit brought by the assignee in the district court, and the prosecution in this court of an appeal from the

judgment there rendered, caused the delay in filing the appellee's claim against Schwarz with the assignee.

The bank claims that until that suit was finally decided it could not ascertain the nature and amount of the demand against Schwarz, and that its claim was filed, so soon as the suit was finally adjudicated in the Supreme Court. If this be a correct position no creditor whose claim is secured by a mortgage is under obligation to file it with the assignee till he ascertains by suit how much of the claim the mortgaged property will satisfy. If the validity of the mortgage or its existence is disputed he must have time to try that question in the courts before presenting his claim to the assignee even for the balance which the mortgaged property can not possibly discharge.

Here the bank's claim amounted to about thirty thousand dollars, and the mortgaged goods were worth about fifteen thousand dollars. Had the mortgage been valid it could not have paid more than about half the debt. The appellee was therefore wholly without excuse for failing to prove up a large portion of his debt, which, whether he won or lost the suit with the assignee, was bound to be due him from the assignor. The statute does not contemplate that such a condition of the claim shall hinder the creditor from filing it. The affidavit to the claim states that the debt is just. There was certainly no obstacle to the appellee's making oath to this effect. It next states that there are no credits or offsets that should be allowed against the claim, except as shown by the statement. If the instrument executed by Schwarz to the bank was a mortgage, the credits to be allowed on account of it were the amounts received from Schwarz upon the sales of the goods, and the collections made upon his notes and accounts. If it was an absolute sale, the amount of credits was the value of the goods conveyed, which was easy of ascertainment. If the character of the instrument was doubtful, the bank could have stated that fact, the estimated value of the goods, the amount realized from sales and collections, and left for adjustment between itself and the assignee the amount which was due upon the claim. Cases must frequently arise when the creditor can not state precisely the amount of his claim owing to uncertainty as to the amount he may realize from securities; but the law does not contemplate that he shall thereby lose the right to prove up his claim, or shall be excused if he fails to do so.

The intention of the statute is to make an early disposition of the assets, and a division of their proceeds amongst the creditors

of the insolvent. It allows short periods for accepting the assignment, filing claims, and to determine as to their validity, and if excuses for not complying with any of these provisions are to be allowed, they certainly will not avail when the creditor has it in his power to comply substantially with them within the prescribed time.

But the case is still stronger against the appellee. Its failure to file the claim within six months was not only caused by its own neglect, but was in furtherance of an attempt on the part of the bank to defeat the assignment and render it wholly useless to the creditors who had accepted its provisions and filed their claims. The goods withheld by the bank from the assignee constituted, with a trifling exception, the entire assigned estate; without it, there was nothing to divide among creditors. The bank stood in the attitude of a party attempting to defeat the assignment, to wrong the other creditors out of their interest in the assigned property, and when defeated in this effort praying to take a pro rata part of the dividends it had endeavored to destroy. This wrong it had tried to effect, not through lawful means, but through violence.

After forcibly ousting assignee of the goods, it kept possession of them till he had prosecuted a suit for them through the district and Supreme courts, and obtained their value only when it was wrested from the appellee by the strong arm of the law. That a consenting creditor can not attach the property in the hands of the assignee is well settled.

It would furnish a poor excuse to such a creditor that he had not filed his claim in time, because he could not tell what was the amount of his debt till he had ascertained how much he would realize from the attached property. It would amount to saying that he had wrongfully delayed the execution of the trust, and for this wrong his laches should be excused; he had kept the creditors out of their dividends, and for this he should share in them when they could be no longer delayed.

Such an excuse has been held worthless in the courts of other States. In Missouri a creditor who attacked an assignment for fraud, and attached the property conveyed by it, was not allowed to partake of its benefits. (Valentine v. Decker, 43 Missouri, 583.) In Iowa it was held that a creditor who had sued an assignee for a portion of the assigned property, claiming it in opposition to the assignment, could not, after he had failed in his suit, urge the pendency of the suit as a reason why he had not exhibited his

claim in the time prescribed by law. (24 Northwestern Reporter, 750.) Such decisions show the tendency of the courts to look with disfavor upon any creditor who tries both to impair and to receive the benefits of an assignment.

Whether, if the bank had filed its claim in time, it should be allowed to receive a share of the dividends, we need not decide in this appeal. Whether it can rely on its own wrong to excuse the delay in complying with the statute, is the question we are considering. The present case is much stronger than the attachment case we have supposed, and the one cited from Iowa. In these the goods were sought through the process of the law; here they were taken by force of arms, and in defiance of law. Such person has no right to the equities of a statute he has attempted to defeat, nor, through a liberal construction of its terms, to deprive other creditors of benefits he had previously tried to defeat in an unlawful manner. We think the court erred in allowing the bank to take any portion of the assigned assets, and thereby to defeat the claims of garnishing creditors to the excess remaining after legally consenting creditors had been fully satisfied. The judgment will be reversed, and so rendered here as to, first, pay the costs and expenses of the trust; second, the claims of all consenting creditors, except the appellee, the full amount of their claims; third, the claim of the appellant Ghillain, and, fourth, the claim of appellant Mayer. The other garnishing creditors not having appealed, no judgment will be rendered in their favor. Any funds remaining after making these payments to be deposited by the assignee in the district court, subject to be paid out on decree of that court; the appellee to pay the costs of this court and of the court below.

We have not overlooked the points made by the appellee to the effect that the assignee has not prosecuted this appeal, and that the appellants can not enforce their garnishment in this suit. The statute contemplates that creditors may litigate with each other as to the amount and justice of their claims. The assignee is a necessary party to such litigation, but he can not, by refusing to plead or appeal in a suit, prevent the injured creditor from an adjudication in this or any other court where the cause may be pending.

The appellants were brought into this case by the amended petition of the appellee. This petition demanded that the rights of garnishing creditors be determined and adjusted in the cause. The court had jurisdiction to determine all such matters, and it

was in consonance with our system of jurisprudence that they should be settled in one suit, and there was no necessity for sending the appellants to another court, or to compel them to resort to another suit for their determination.

The judgment will be reversed and rendered as already set forth in the opinion.

*Reversed and rendered.*

Opinion delivered February 25, 1887.

ON MOTIONS TO REFORM JUDGMENT, AND FOR REHEARING.

WILLIE, CHIEF JUSTICE.   Since the judgment was entered up on this appeal a motion has been filed by the assignee, I. Lovenberg, to so reform the judgment as to allow consenting creditors interest upon their claims.   The appellee has also filed a motion for rehearing, in which it is asked among other things that the cause he remanded to the district court with instructions as to the proceedings there to be had and the judgment to be rendered. The appellee asks further that if the judgment is rendered here, it may adjudicate also as to its claim against the assignee, Carl Schwarz.

As to this latter claim it is sufficient to say that in the court below judgment was rendered in favor of Schwarz and against the bank upon the claim, and from that judgment no appeal was taken, or assignment of error made for the purpose of reversing it.   That judgment must therefore be treated as final upon this appeal, as also in the future proceedings to be had in the cause below, hereinafter directed.

The opinion and judgment heretofore rendered will be so amended and reformed as to revise the judgment and remand the cause, with instructions to the court below to enter up judgment in all things conforming to the opinion heretofore delivered in the cause.   The court will ascertain the amount of expense to which the assignee has been subjected in the management of his trust, and adjudge the same to be first paid out of the assigned estate.   It will not include among such expenses the costs of this suit, but will direct its entire cost to be paid by the appellee.

It will next ascertain the amount due and unpaid to consenting creditors, who have duly proved up their claims against the assigned estate, calculating interest thereon from the date when according to law interest commenced to run upon such claims.   The court will not include the appellee among such creditors, nor al-

low it to receive any pro rata whatever upon the claim which was the foundation of this suit as brought and prosecuted by the appellee. That claim has been adjudged by this court not to be entitled to be ranked as the claim of a consenting creditor, and upon that question the decision of this court must be regarded as final.

If any balance remain, the court will apply the same first towards the payment of the claim of appellant Ghillain; and should there still be a balance, it is to be appropriated towards the claim of appellant Mayer. If a balance still remain the court will dispose of it as to law and equity may appertain.

The entire cost of this suit, both in this court and the court below, will be adjudged against the National Bank of Texas.