Robert B. NAU, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 13444.

United States Court of Appeals
Sixth Circuit.

Nov. 26, 1958.

Robert E. Steman, Cincinnati, Ohio (Reid F. Moore, Palm Beach, Fla., on the brief), for petitioner.

Wayne G. Barnett, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney and J. Dwight Evans, Jr., Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MARTIN and MILLER, Circuit Judges, and THORNTON, District Judge.

THORNTON, District Judge.

The petitioning taxpayer, Robert B. Nau, has been held to transferee liability for income tax deficiency of his father-in-law's estate by the Commissioner of Internal Revenue, whose determination has been approved by the Tax Court. We are asked by petitioner to reverse.

The facts, briefly, are as follows: Petitioner is the husband of Ethel Nau. Ethel Nau is the daughter of the deceased S. B. Hamilton, Sr., who was liable for income tax deficiency for the years 1943 and 1944 in the amounts of $8,796.87 and $7,245.38 respectively. It appears to be without dispute that Ethel Nau concedes liability as a transferee of her father's estate in these amounts. No part of these deficiencies has been paid. The Commissioner seeks to hold petitioner, the husband of Ethel Nau, for part of these deficiencies by virtue of *his* liability as a transferee of a tranferee (Ethel Nau). There is statutory provision for such liability.[1]

The argument of petitioner as here presented is 4-pronged. First, he contends that the Commissioner failed to show that the claimed transfers were gifts from Ethel Nau to petitioner) husband). Second, petitioner contends that the Commissioner failed to show that Ethel Nau was insolvent prior to the making of each transfer, or that she was rendered insolvent thereby. Third, petitioner contends that the Commissioner failed to show the value of the transfers. Fourth, petitioner contends that the Commissioner failed to show that he proceeded against Ethel Nau, as primary transferee, or that such efforts would have been futile.

The total amount here involved is $8,509.03 plus interest. This figure has been considered by the parties to consist of the following amounts: $2,000, $4,946.83, $1,500 and $62.20.

■ As to the $2,000 item, this was an estate distribution to Ethel Nau and was deposited March 17, 1947 in a joint savings account of Ethel Nau and petitioner where a prior balance of $1,222.29 was on deposit. This account was closed out on October 31, 1947, the close-out balance being $2,181.13. On the same day $3,344.13 was deposited in a regular joint checking account (Ethel Nau and the petitioner) where the prior balance was $101.42. The revenue agent deduced from the above that tracing was conclusive as to the original $2,000 deposited in the joint savings account. He further deduced that when a $3,000 check was drawn on this checking account and used for a down-payment on a house owned by petitioner, that $2,000 of the $3,000 was derived from the $2,000 deposited March 17, 1947, in the joint savings account. In accepting this as a logical conclusion, much less a legal one, we must disagree with both the Commissioner and the Tax Court. To say that because $2,181.13 is withdrawn from one bank account of an individual and that $3,344.13 is deposited in another bank account of the same individual on the same day there

1. See Internal Revenue Code of 1939, Sec. 311(a) (1) and (f) [26 U.S.C. 1952 ed., Sec. 311]; Sec. 1119(a) [26 U.S.C. 1952 ed., Sec. 1119]. Also applicable here is Sec. 29.311–1 [as amended by T.D. 5458, 1945 Cum.Bull. 45] of Treasury Regulations 111, Promulgated under the Internal Revenue Code of 1939.

arises any kind of presumption or inference that the latter amount includes the former appeals to us as the classic non sequitur. At this point, insofar as the $2,000 that is a component figure of the total $8,509.03 is concerned, it must be deducted. The ruling of the Tax Court in this respect is reversed.

As to the other 3 categorized amounts—$4,946.83, $1,500 and $62.20—they are not subject to the same infirmity. They represent amounts withdrawn from a special joint checking account (Ethel Nau and petitioner) and used for mortgage payments and house improvements (as to the $4,946.83) on a house purchased by petitioner on or about October 31, 1947 (title taken in his name alone); for payment of stock purchased by petitioner (as to the $1,500) and held by him alone; for insurance premium payment (as to the $62.20) on a policy of petitioner's. The funds on deposit in this special joint checking account were receipts by Ethel Nau of estate distribution in the amount of $5,000 (used to open this bank account on October 10, 1947) and $11,143.43 deposited January 21, 1948.

We now reach the 4 points urged upon us by petitioner which we consider in relation to the funds withdrawn from the special joint checking account and used for the purposes above set forth. Petitioner argues that the amounts withdrawn from this joint account were not gifts from Ethel Nau to petitioner. Counsel for petitioner in his argument to the Court devoted the majority of his time and the emphasis of his argument to the point that there was no proof here of *gifts* from wife to husband. We think it important to note here that this concept of *gift* is not a part of the reasoning of the Tax Court. Not once is the word used in the opinion of the Tax Court. The Government in its brief does not resort to its use. The Commissioner has not labeled the transfers as gifts. We think that petitioner's nomenclature here is the cause of some confusion. Generally, a gift connotes not only a parting with title to something, but also a permanent relinquishment of control and so intended by the donor of the gift. When some of Ethel Nau's inheritance was used to make mortgage payments and improvements on a house owned by petitioner, and presumably occupied by petitioner and his wife, Ethel Nau, we agree with petitioner that it was not an out-and-out gift in the sense the term is ordinarily used. However, if we employ the kind of language indicated here we must refer to transfers of legal title. When Ethel Nau parted with the $4,946.83 item of cash, she gave up legal title to it as it became converted into a tangible asset held in the name of her husband. The Government could not reach it in terms of ownership by her. The title to that money or the title to the proceeds of that money is in either Ethel Nau or the petitioner, one of the two. It did not just evaporate. It was put into a tangible form. No one is here contending that Ethel Nau still has it, as a practical matter. As between herself and her husband, what the arrangement may be is anyone's guess. Neither she nor her husband has testified as to the nature of the transaction, although the opportunity to do so was available. Objectively, though, it is clear that a transfer was effected from No. 1 transferee, Ethel Nau, to No. 2 transferee, petitioner.

As for the remaining 2 items, the $1,500 and the $62.20, there is a clear title transfer; whether intended as a gift, or a loan, or an investment is not here important. Neither petitioner nor his wife undertook to clarify in any manner the transaction. The Government made a prima facie case of transfer, and if explanation was in order it was due from petitioner and his wife. None was supplied.

On the issue of insolvency, we are of the view that a prima facie case was made by the Government. The use of the sworn financial statement of Ethel Nau submitted in connection with settlement negotiations is permissible. "While facts assumed to be true for the

purpose of compromise are ordinarily not competent as admissions against interest, a distinct admission of a fact will not be summarily excluded simply because it was made in connection with an effort to compromise." Cooper v. Brown, 3 Cir., 1942, 126 F.2d 874, 878. Revenue Agent McIntyre used this statement as only one of several items he considered in reaching the determination of insolvency. The burden of going forward shifted to the petitioner to show that his wife was in fact not insolvent, and he failed to even attempt to shoulder it. This failure is fatal to his position on the question of insolvency.

We are less than impressed with petioner's argument as to the value of the transferred assets. Money is money. The combined sums of $4,946.83, $1,500 and $62.20 total a certain amount. There is no possible question as to value. Whether the money was spent wisely or foolishly, for mortgage payments, for house improvements, or for any other purpose is not important as bearing on its value when transferred from Ethel Nau to petitioner.

We think that the Commissioner also made a prima facie case as to the futility of proceeding against Ethel Nau to collect the amount for which petitioner is here held liable. That the Government has or has not proceeded against the other primary transferees is not within our province to evaluate as to equity. The right to proceed against the secondary transferee here is the prerogative of the Government. The tax sought to be collected here is one that was owed by the deceased S. B. Hamilton, Sr., on income received by him during his lifetime and which he failed to remit to the Government. The Commissioner actually determined deficiencies for the years 1941 to 1945 inclusive, and assessed fraud penalties for each of the years 1941 to 1944. The assets of the estate of Dr. Hamilton were distributed to his beneficiaries before being applied in payment of the tax obligation of Dr. Hamilton. The fact that the beneficiaries became actual recipients of such funds does not result in inequity in their being required to return them. This applies equally to the tracing of such assets, regardless of the path, in order to marshal them for use in discharge of the primary obligation.

The decision of the Tax Court is affirmed except as to the item of $2,000 herein disallowed.