HELEN R. ALBERT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5029–68. Filed May 27, 1971.

Helen R. Albert, pro se.
*Daniel A. Taylor, Jr.*, for the respondent.

SIMPSON, *Judge:* The respondent determined that the petitioner was liable as transferee for an addition to tax of Jo-Jud Corporation and interest in the amount of $3,195.29. There is no dispute over the liability of Jo-Jud Corporation for the addition to tax and interest determined by the respondent. The sole issue for decision is whether the petitioner is liable as a transferee for such addition to tax and interest.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioner, Helen R. Albert, maintained her residence in San Antonio, Tex., at the time of filing her petition in this case.

Jo-Jud Corporation (Jo-Jud) was incorporated under the laws of Texas on August 25, 1959. At all relevant times, the principal place of business of Jo-Jud was San Antonio, Tex. During such time, Dr. Arnold Albert, the petitioner's husband, was the president of Jo-Jud, and both Dr. Albert and the petitioner were directors and shareholders of Jo-Jud. Jo-Jud filed its 1960 U.S. corporation income tax return with the district director of internal revenue, Austin, Tex. Such return was required to be filed on or before March 15, 1961, but was not mailed to the district director until on or about September 14, 1961.

Sometime prior to July 16, 1962, Jo-Jud ceased to do business, and on that day, it forfeited its right to do business in Texas. At such time and thereafter, Jo-Jud was and continued to be insolvent. On June 11, 1963, Jo-Jud's corporate charter was revoked.

On December 14, 1964, an agent of the respondent contacted Dr. Albert as president of Jo-Jud in order to arrange for an audit of Jo-Jud's 1961 Federal corporate income tax return. Between December 14, 1964, and March 8, 1965, there were several telephone conversations between the agent and Dr. Albert with respect to such audit. On February 15, 1965, the respondent's agent decided to expand the audit of Jo-Jud to

include its returns for the years 1960, 1962, and 1963, but such audit did not begin until March 22, 1965.

As a result of the audit of Jo-Jud's 1960 return, the respondent determined a potential deficiency in the amount of $9,124.45 in Jo-Jud's 1960 Federal corporate income tax. The respondent also determined, as a result of the audit of Jo-Jud's 1962 and 1963 returns, that Jo-Jud had net operating losses in 1962 and in 1963, and that as a result of the carryback of such operating losses under the provisions of section 172(b) of the Internal Revenue Code of 1954,[1] the potential deficiency in Jo-Jud's 1960 Federal corporate income tax was eliminated.

On March 8, 1965, Jo-Jud was indebted to the petitioner in the amount of $19,580.16, plus interest, for certain loans to the corporation evidenced by five promissory notes. Such debts were unsecured. The funds loaned to Jo-Jud by the petitioner were proceeds of Dr. Albert's professional practice. On March 8, 1965, Jo-Jud transferred all of its remaining assets to the petitioner by a warranty deed executed on its behalf by its president in payment of the amount due under the five promissory notes. Such assets consisted of certain real property, some unimproved and some improved, having an aggregate fair market value of $22,960. Also, there is some evidence that Jo-Jud may have been indebted to other lenders.

On or about April 21, 1966, Dr. Albert executed on behalf of Jo-Jud Form 870 and thereby formally agreed to the assessment and collection of an addition to Jo-Jud's income tax liability for the taxable year 1960 under the provisions of section 6651(a) in the amount of $2,281.11 and an overassessment of Jo-Jud's income tax for that year in the amount of $418.15, together with interest as provided by law. On December 9, 1966, the respondent assessed such addition with interest as provided under section 6601(e) in the amount of $1,879.79 and made notice and demand on Jo-Jud for payment thereof. The respondent has conceded that the amount of his assessment of such interest was erroneous to the extent of $547.46. Because Jo-Jud was insolvent on December 9, 1966, and continuously thereafter until the time of the trial in this case, the respondent was not able to collect any of the amounts assessed against Jo-Jud. He determined that the petitioner was liable for such amounts as a transferee of the assets of Jo-Jud.

OPINION

There is no dispute over the liability of Jo-Jud for the addition to tax and interest determined by the respondent; the only issue for us to decide is whether the petitioner is liable as a transferee for such addition to tax and interest.

---

[1] All statutory references are to the Internal Revenue Code of 1954.

Section 6901(a) provides a method of collecting from a transferee of property taxes due from the transferor thereof. Under section 6902(a), the respondent has the burden of proving that there was a transfer and the value of the assets transferred, that such transfer was made while the transferor was insolvent or caused the transferor to be insolvent, and that the respondent has made a reasonable effort to collect the amount of tax due from the transferor. Sec. 301.6902–1, Proced. & Admin. Regs.; *J. Warren Leach*, 21 T.C. 70 (1953); *Ethel Hamilton Nau*, 27 T.C. 999 (1957), affirmed on this issue 261 F. 2d 362 (C.A. 6, 1958). The existence and extent of the substantive liability of a transferee at law or in equity is determined in accordance with State law. *Commissioner* v. *Stern*, 357 U.S. 39, 45 (1958); *Ruth Mendelson*, 52 T.C. 727 (1969).

The respondent has proved that on March 8, 1965, Jo-Jud transferred its remaining assets to the petitioner in return for cancellation of an antecedent debt. The value of the assets transferred was established by convincing evidence to be $22,960, and exceeded the amount claimed by the respondent. He has also proved that at the time of the transfer, the corporation could not pay its debts in the ordinary course of its business, and that its liabilities exceeded its assets; therefore, we have concluded that at the time of the transfer, Jo-Jud was insolvent. Texas Bus. Corp. Act, art. 1.02(A)(16) (1959); see also *Micarley Mining Co.* v. *Carpenter*, 21 S.W. 2d 711 (Tex. Civ. App. 1929); *First National Bank of Littlefield* v. *Neel*, 10 S.W. 2d 408 (Tex. Civ. App. 1928). Such was Jo-Jud's condition when, on December 9, 1966, the respondent assessed the additions to tax and interest in issue; thus, any attempt to proceed directly against the corporation with respect to such additions to tax and interest would have been fruitless. *Elizabeth Hamilton Nau, supra*. The sole remaining question is whether the petitioner is liable at law or in equity as a transferee of the assets of Jo-Jud under the applicable State law.

Under Texas law, when a corporation becomes insolvent, has ceased to do business, and there is no intention on its part to resume business, its property and assets become a trust fund for all of its creditors. *Lyons-Thomas Hardware Co.* v. *Perry Stove Manuf'g. Co.*, 24 S.W. 16 (Tex. 1893); see 14 Texas Jurisprudence 2d, sec. 521 *et seq.* In such event, neither the corporation nor its directors have the power to transfer corporate assets in such manner as to create a preference among its unsecured creditors. Thus, in *Lyons*, the Supreme Court of Texas said at page 25:

[Such condition of the corporation] * * * under the long-recognized rules of equity, conferred upon every unsecured creditor of the corporation the right to a ratable share of the proceeds of all the assets of the corporation, not subject to priorities lawfully existing when this condition arose; * * * neither the stock-

holders nor directors of the insolvent corporation had lawful power * * * to make a preferential deed of trust, whereby any creditor, whether a stockholder, director, or other officer of the corporation, or not, could acquire a preference, and * * * the attempted preference would be invalid as to other creditors of the corporation.

In *Orr & Lindsley Shoe Co.* v. *Thompson*, 89 Tex. 501, 35 S.W. 473 (1896), the court also said at page 473 :

The rights of all creditors in the [trust] fund are by law fixed so soon as the conditions arise out of which the trust relation springs. After the trust attaches, neither the corporation nor the trustees can by any act of theirs affect the rights of the creditors * * *

Moreover, the directors of the corporation have an affirmative duty to see that its assets are devoted to the payment of the debts of the business. *Waggoner* v. *Herring-Showers Lumber Co.*, 40 S.W. 2d 1 (Tex. 1931). Officers and directors of the corporation who are also its shareholders cannot manipulate the affairs of a corporation so as to become its preferred creditors to the injury of general creditors. *Continental Supply Co.* v. *Forrest E. Gilmore Co.*, 55 S.W. 2d 622, 628 (Tex. Civ. App. 1932). An unsecured creditor who is injured by a transfer which creates a preference in violation of the trust imposed by virtue of the corporate condition is able to pursue the transferred assets into the hands of a transferee (*Love* v. *Gamer*, 64 S.W. 2d 393 (Tex. Civ. App. 1933)), and he is entitled to share ratably in the proceeds of the trust. *Lyons-Thomas Hardware Co.* v. *Perry Stove Manuf'g Co.*, *supra*. The trust and equitable liens incident thereto cease when all creditors of the corporation have been satisfied either in full or as to their prorata shares of such proceeds. *Houston* v. *Shear*, 210 S.W. 976 (Tex. Civ. App. 1919).

The respondent contends that at the time of the transfer to the petitioner, the assets of Jo-Jud were held in trust by its directors, that the transfer of such assets resulted in a preference of the petitioner over the respondent, and therefore that such transfer was invalid as to him. The respondent asserts that under Texas law, such assets passed to the petitioner subject to a lien in equity, and that he as an injured creditor had the right to enforce such lien against the property in the hands of the petitioner. The respondent further maintains that the petitioner is liable not only as a preferred creditor but as a director of Jo-Jud as well, but he concedes the right of the petitioner as an unsecured creditor to share pro rata in the proceeds of the trust fund.

The petitioner concedes the existence of a trust and the fact that the respondent was a creditor of Jo-Jud, but argues that the transfer to her was not invalid because the trust terminated prior to the presentation of the respondent's claim, and because the respondent failed to present his claim timely. In view of the trust imposed upon the assets

of Jo-Jud and the transfer to the petitioner, we think that the respondent has made a prima facie case as to the petitioner's liability under Texas law; thus, with respect to her contentions, she has the burden of going forward with the evidence. *Ethel Hamilton Nau, supra.*

With respect to her first contention, the petitioner offered no evidence of any legal proceeding resulting in a general discharge of Jo-Jud from its obligations to all its unsecured creditors. Thus, the petitioner's reliance on the holding in *Houston* v. *Shear, supra,* is inapposite. In *Houston,* the validity of an execution sale was challenged on the basis of the trust fund theory; but there had been notice to creditors and a composition of their claims, and the court found (1) that there were no creditors remaining who could demand a ratable distribution of the assets, and (2) that the debts of all except secured creditors had been discharged in the composition proceeding. On the contrary, in this case, Dr. Albert as the president of the corporation undertook to transfer all of its remaining assets to the petitioner, and there is no evidence that the respondent was given any notice of the need for presenting his claims or any opportunity to object to the proposed transfer. Under these circumstances, we think that this situation is distinguishable from that in *Houston* v. *Shear, supra.*

The petitioner also argues that under the trust fund doctrine, a director of a corporation is responsible only to those creditors whose claims are known, and that since the respondent failed to present a claim prior to the transfer of the assets to the petitioner, he has no right to share in such assets. However, under Texas law, the contingent claim of a creditor is as fully protected as one which is absolute. *Hollins* v. *Rapid Transit Lines, Inc.,* 430 S.W. 2d 57 (Tex. Civ. App. 1968) ; *First State Bank of Mobeetie* v. *Goodner,* 168 S.W. 2d 941 (Tex. Civ. App. 1943) ; *Colby* v. *McClendon,* 116 S.W. 2d 505 (Tex. Civ. App. 1938) ; *Frees* v. *Baker,* 16 S.W. 900 (Tex. 1891). In *Waggoner* v. *Herring-Showers Lumber Co., supra* at 5, 6, the Supreme Court of Texas quoted with approval the following language from *Darcy* v. *Brooklyn & New York Ferry Co.,* 196 N.Y. 99, 89 N.E. 461 (Ct. App. 1909) :

The narrative of the transaction leaves no doubt that what the directors of the Brooklyn & New York Ferry Company sought to bring about was a voluntary dissolution of the corporation, and the distribution of its assets without taking the steps to that end which are prescribed by law. Notwithstanding their failure to proceed under the statute, they contend that a creditor of a corporation has no standing to compel them to pay a claim of which they were ignorant at the time of the transfer of the corporate property, in the absence of proof of actual fraud on their part. It is true that there is no allegation or finding of fraud ; but there is evidence that the officers of the company had knowledge of the injury to the plaintiff which was the basis of his claim. The liability of the directors is predicated, not on the ground that their action in making the transfer was fraudulent, but upon the proposition that it is a violation of duty on the part of the directors

of a corporation to devest [sic] it of all its property without affording a reasonable opportunity to its creditors to present and enforce their claims before the transfer shall become effective. * * *

* * * It is not necessary to determine precisely what the directors of a corporation must do in order to protect themselves against liability when they undertake to divest it of all its property and practically dissolve it without taking the proceedings for a voluntary dissolution which are prescribed by law. For the purposes of the present case, it is enough to say that they were bound to give some notice to creditors of the proposed transfer, and they gave none whatever. We think that their failure to do so was "a violation of their duties," under subdivision 2 of section 1781 of the Code of Civil Procedure, and rendered them liable to the plaintiff for the amount of the claim which he established against the corporation as having accrued before the transfer. The motives which induced the omission are immaterial. The entire assets could not lawfully be set over by the selling corporation to the purchasing corporation until some sort of opportunity had been given to the creditors of the latter to present and enforce their claims. The neglect to afford this opportunity is what constituted a violation of the directors' duties, and it matters not that they may have supposed they were not required to do any more than they did for the protection of creditors.

In *Waggoner*, it was held that a director might be liable to a creditor of a corporation when the assets of the corporation were transferred without providing the creditor a reasonable opportunity to present his claims.

The evidence is conclusive that even if Dr. Albert did not know the amount of the claim of the respondent, he, as president of the corporation, at least knew of the events out of which such claim arose. Dr. Albert testified that in 1961 he knew that Jo-Jud's Federal income tax return was not filed when due and not until approximately 7 months thereafter. He also testified that he tried without success to get Jo-Jud's accountant to file such return, but that he did not suggest that the accountant request an extension for the time of filing, and that he did not himself take any steps to secure such extension. There is no evidence that the delay was reasonable under the circumstances, and the petitioner makes no argument to that effect. The testimony also discloses that Dr. Albert knew, prior to the transfer in issue, that certain tax returns for previous years were under investigation, and whether or not he knew specifically that the return for the year 1960 was one of those under scrutiny, he at least knew generally that some tax liability on the part of Jo-Jud could arise from such investigation. Compare *Delia v. Commissioner*, 362 F. 2d 400 (C.A. 6, 1966), affirming a Memorandum Opinion of this Court; cf. *Neill* v. *Phinney*, 245 F. 2d 645 (C.A. 5, 1957). In addition, there is no evidence that the respondent was given any notice of the transfer of March 8, 1965, prior to its occurrence, or that any steps were taken to set aside any portion of the remaining assets for payment of any claim which might arise out of the respondent's investigation. *Waggoner* v. *Herring-Showers Lumber Co., supra*. Under these circumstances, we find that Dr. Albert had suf-

ficient knowledge of the existence of a possible claim by the respondent to impose upon him a duty of providing the respondent notice of the impending transfer to the petitioner and an opportunity to present any claim that he might have. A failure to give such notice and opportunity was a breach of his fiduciary responsibility and entitles the respondent to share in the transferred assets. *Lyons-Thomas Hardware Co.* v. *Perry Stove Manuf'g Co.*, *supra.*

We also do not agree with the petitioner's argument that her claim should have priority over that of the respondent's because his claim was not presented until after the transfer of assets to her. In support of her argument, she cites *Lovenberg* v. *National Bank of Texas*, 67 Tex. 440, 2 S.W. 874 (1887). In that case, there was an assignment for the benefit of creditors in accordance with the statute under which creditors were required to assent to the assignment within 4 months and to prove their claims within 6 months. The court held that the claims of creditors who did assent and prove such claims within the prescribed periods received priority treatment. However, the transfer of assets in this case was not made pursuant to any such statute, and the respondent was not given any specified period within which to present and prove his claim. Accordingly, we think that the *Lovenberg* decision has no application in this case.

We hold, therefore, that the petitioner is liable as a transferee for the addition to tax and interest due from Jo-Jud. However, the respondent is entitled only to a prorata share of the assets transferred to the petitioner. The formula suggested by the respondent for determining his prorata share seems manifestly improper. His share should be computed by multiplying the value of the transferred assets by a fraction of which the numerator is the amount of his claim and of which the denominator is the sum of the claims of the creditors entitled to share in the assets. Accordingly,

*Decision will be entered under Rule 50.*