JAMES S. D'AGOSTINO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
D'Agostino v. Commissioner
Docket No. 3904-70.
United States Tax Court
T.C. Memo 1973-202; 1973 Tax Ct. Memo LEXIS 86; 32 T.C.M. (CCH) 937; T.C.M. (RIA) 73202; September 11, 1973, Filed *86 Petitioner owned 50 percent of the capital stock in Rolling Inn, Inc. During 1956 all of the real property of the corporation was condemned by the Maryland State Roads Commission and the corporation received an award. As of February 17, 1957, the net proceeds of this award was $21,699.80. On February 18, 1957, the corporation issued a check for $2,000 to petitioner and one for $2,000 to Kelly, the remaining shareholder. On March 4, 1957, the corporation issued two checks each in the amount of $8,000 to petitioner and Kelly. No consideration flowed to the corporation for these payments. Immediately after the March 4, 1957 transfers the corporation bank accounts had a total of $2,440.52, and thereafter no new assets came into existence. After these transfers to petitioner the corporation had insufficient assets with which to pay its Federal income tax liabilities for the taxable year December 31, 1956 to March 31, 1957. Held, since the transfers in question left Rolling Inn, Inc. insolvent, petitioner is liable to the extent of $9,291.89, plus interest, as a transferee of assets for the deficiency in income tax, and the addition to tax of the corporation for the year ending *87 March 31, 1957. 2 Anthony J. Nolan, for the petitioner. Shepherd S. Neville, for the respondent. WITHEY
MEMORANDUM FINDINGS OF FACT AND OPINION WHITHEY, Judge: Respondent determined a deficiency against petitioner as a transferee of the assets of Rolling Inn, Inc., to the extent of $9,291.89, for the deficiency *88 in income tax of the corporation as follows: Year
Deficiency
Addition to tax (Sec. 6651(a)) December 1, 1956 to March 31, 1957
$12,339.92
$3,084.98
The sole issue presented for our consideration is whether the petitioner is liable, to the extent of $9,291.89, plus interest, as a transferee of assets for the deficiency in income tax, plus the addition to tax under section 6651(a) of the Code of 1954 [1] and interest, of Rolling Inn, Inc. for the taxable year ending March 31, 1957. 3 FINDINGS OF FACT James S. D'Agostino, hereinafter sometimes called D'Agostino or petitioner, was a resident of Baltimore, Maryland at the time of filing the petition in the instant proceedings. From January 1951 until March 1957 petitioner owned 50 percent of the outstanding capital stock of Rolling Inn, Inc., and devoted approximately 25 percent of his time to the operation of this corporation. During 1956 and 1957, petitioner was employed by the Baltimore Steam Packett Company. From January 1951 until March 1957 the remaining 50 percent of capital stock *89 of Rolling Inn, Inc. was owned by Carroll F. Kelly, hereinafter sometimes called Kelly. Kelly served as president of the corporation, and was engaged full time in the operation thereof. Rolling Inn, Inc. was a Maryland corporation formerly in the business of owning and operating a tavern at Catonsville, Maryland. The principal asset of the corporation was the land and building situated thereon that constituted its place of business. During 1956, condemnation proceedings aginst this property of Rolling Inn, Inc. were instituted by the Maryland State Roads Commission. 4 As a result of the condemnation proceedings, Rolling Inn, Inc. was awarded approximately $101,300. After payment in satisfaction of the outstanding mortgage on the property, expenses of the condemnation proceedings, and miscellaneous payments by the corporation, there remained approximately $21,699.80 of the condemnation proceeds as of February 17, 1957. On or about February 18, 1957, Rolling Inn, Inc. simultaneously issued a check for $2,000 to petitioner and a check for $2,000 to Kelly. On or about March 4, 1957, the corporation simultaneously issued a check for $8,000 to petitioner and a check for *90 $8,000 to Kelly. These distributions were made from the corporation's bank account with Pikesville Peoples Bank, Pikesville, Maryland. There was no consideration flowing to Rolling Inn, Inc. for the transfers, totaling $10,000 by the corporation to petitioner. Immediately prior to the February 18, 1957 transfers to petitioner and Kelly, the corporation had balances in its two bank accounts totaling $24,656.43, comprised of the balances in its real estate account and its operating account of $23,699.80 and $956.63, respecitvely. 5 Immediately after the March 4, 1957 transfers to petitioner and Kelly by Rolling Inn, Inc., the corporation's bank accounts had a total balance of $2,440.52, comprised of the balances in its real estate account and its operating account of $978.80 and $1,461.72, respectively. Both petitioner and Kelly co-signed checks drawn on the real estate account of Rolling Inn, Inc. The distributions to petitioner and Kelly of the funds of Rolling Inn, Inc. which occurred on February 18, 1957 and March 4, 1957 were designed to place corporate assets into the possession of petitioner and Kelly in contemplation of the imminent cessation of corporate business *91 caused by the loss of the corporation's principal asset and place of business. As a part of the plan of liquidation, Kelly paid to petitioner at least $2,000 for petitioner's 50 percent ownership of the remaining non-cash assets of Rolling Inn, Inc. The source of the payment to petitioner for his transfer of the non-cash assets of Rolling Inn, Inc. was a portion of the cash distributions, to the parties by the corporation, received by Kelly. 5 The remaining balances of the bank accounts in the name of Rolling Inn, Inc., after March 4, 1957, were not used to carry on business of the corporation. Immediately after the final payment to petitioner on March 4, 1957 and at all times subsequent thereto, Rolling Inn, Inc. had insufficient assets with which to pay its Federal income tax liability of $12,339.92 and addition to tax of $3,084.98 for the taxable year December 1, 1956 to March 31, 1957. On March 4, 1957, Rolling Inn, Inc. permanently ceased to do business. No assets of Rolling Inn, Inc. came into existence after March 4, 1957. Petitioner filed his individual income tax return for the calendar year 1957 and reported the amount of $9,291.89 as a long-term capital *92 gain on the "sale" of his 50 percent stock interest in Rolling Inn, Inc. On September 18, 1956, an application for a beer, wine and liquor license on behalf of Rolling Restaurant, Incorporated, a corporation owned by Carroll F. Kelly, Gertrude M. Kelly, and William Beck, was heard by the Board of Liquor License Commissioners for Baltimore County. The Opinion of the Board reads in pertinent part as follows: 7 This application was heard on September 18, 1956. There was no protest. One or more of the members of the above Corporation has or have an interest in a like business a very short distance from the location herein applied for.That location and all buildings thereon have been condemned and will be taken over by the State of Maryland and in a very short time will be out of business. The Board feels that there is sufficient demand for the accommodation of the neighborhood and therefore approves the application. Under authority of Article 2 B of the Annotated Code of the State of Maryland, Section 149, Sub-Section E Baltimore County, the Board defers the granting of the license and instruction to the Clerk of the Circuit Court to issue same until the completion of construction *93 work on the premises applied for and inspection and approval by the Liquor Board; and until the State has actually taken over the land and buildigns of the premises in which one or more of the members of the present Corporation holds an interest and until that business is dissolved or abandoned. The aforementioned liquor license in the name of Rolling Inn, Inc. was to expire on April 30, 1967. During the period from March 4, 1957 until sometime after May 1, 1957, Kelly was not employed by Rolling Inn, Inc., or by Rolling Restaurant, Incorporated. Sometime after May 1, 1957, Kelly opened Rolling Restaurant, Incorporated, a tavern, a 6212 Baltimore National Pike, Catonsville, Maryland. This corporation was a separate business from that operated by Rolling Inn, Inc. 8 During the taxable period December 1, 1956 to March 31, 1957, Rolling Inn, Inc. incurred liability for Federal income tax in the amount of $12,339.92. Respondent also determined an addition to tax against the corporation under section 6651(a) of the 1954 Code in the amount of $3,084.98. All reasonable efforts were made to collect the deficiency and penalty against Rolling Inn, Inc. from the corporation *94 but have been unsuccessful. The corporation now has no assets from which this liability may be collected. Of the total amount of this liability of the corporation, respondent determined that $9,291.89, plus interest, was the extent of petitioner's liability as a transferee of the assets of Rolling Inn, Inc. On December 6, 1967, Louis R. Rosenthal acting under a power of attorney given by Carroll F. Kelly, the president of the transferor, executed Internal Revenue Service Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment. This form covered the period December 1, 1956 to March 31, 1957 of the transferor and agreed to the determination of deficiencies with respect to Rolling Inn, Inc. for this taxable period. 9 ULTIMATE FINDING OF FACT Petitioner is liable, as a transferee of the assets of Rolling Inn, Inc., for the unpaid Federal tax liability of this corporation to the extent of $9,291.89. OPINION There is no dispute with respect to the liability of Rolling Inn, Inc. for the deficiency and addition to tax determined by the respondent; the only issue is whether the petitioner is liable to the extent of *95 $9,291.89, plus interest, as a transferee of assets of the corporation for the deficiency in income tax involved plus the addition to tax for the taxable year December 1, 1956 to March 31, 1957. Section 6901(a), I.R.C. 1954[2] provides a method of collecting from a transferee of property taxes due from the transferor thereof. Under section 6902(a) the respondent 10 has the burden of proving (1) that assets were transferred to the transferee for no consideration or an inadequate consideration; (2) that this transfer of assets left the transferor insolvent or was in fraud of creditors; (3) the value of the assets transferred; and (4) that respondent has made a reasonable effort to collect the amount of tax due from the transferor or that to proceed against the transferor would be a useless gesture. Francis L. Hine, 54 T.C. 1552 (1970); Kreps v. Commissioner, 351 F.2d 1, 8 (C.A.2, 1965), affirming 42 T.C. 660 (1964); Ethel Hamilton Nau, 27 T.C. 999 (1957), affirmed on this issue 261 F.2d 362 *96 (C.A. 6, 1958). The existence and extent of the substantive liability of a transferee at law or in equity for the transferor's obligation is determined in accordance with State law; i.e., in the instant case the State of Maryland, in which the transfer took place. Commissioner v. Stern, 357 U.S. 39, 45 (1958). However, it is a well settled principle that corporate *97 property is impressed with a trust for the benefit of the corporation's creditors and that a voluntary transfer, leaving the corporation insolvent, renders the transferee liable in equity to the creditors of the transferor, to the extent of the assets transferred. 11 Neill v. Phinney, 245 F.2d 645 (C.A. 5, 1957). In Maryland, the place of residence and of business of both petitioner and Rolling Inn, Inc., this principal has been codified. Md. Ann. Code, Art. 39B (1957). Accordingly, the evidence presented herein will be measured against this criteria. In essence respondent contends that petitioner is liable, to the extent of $9,291.89 plus interest, as a transferee of assets of Rolling Inn, Inc., for the deficiency in income tax of the transferor for the taxable year ended March 31, 1957 in the amount of $12,339.92 plus an addition to tax in the amount of $3,084.98 pursuant to section 6651(a), supra. Petitioner, in opposition, argues that the payment of $10,000 to him was not a liquidation of the corporation as respondent avers, but rather a sale of his 50 percent interest in Rolling Inn, Inc.; and that the surviving stockholder, Carroll F. Kelly, operated *98 Rolling Inn, Inc. for 2 or 3 months after D'Agostino left and until Kelly transferred all the non-cash assets to his new business operated under the name Rolling Restaurant, Incorporated. It is petitioner's position that the total assets of 12 Rolling Inn, Inc. immediately prior to the payment to the petitioner of $10,000 consisted of cash in the operating account of $1,461.72, cash in the real estate account of $19,699.80, a receivable from the Maryland State Roads Commission of $4,686.55, non-cash assets of at least $5,000, for a total of $30,848.07. In addition thereto, there was a liquor license which he alleges had substantial value. There is no affirmative evidence before us to support petitioner's position. The record shows that the transfer of the corporation's assets to D'Agostino was a liquidating distribution for his stock. Such a transfer is one which has long been recognized as resulting in the stockholders of the liquidated corporation being liable for the corporation's debts existing at the time of distribution. Grand Rapids National Bank, 15 B.T.A. 1166, 1176 (1929). *99 D'Agostino received $10,000 in cash from the assets of Rolling Inn, Inc. by means of two checks drawn on the corporation's bank account, and no consideration flowed to the transferor for any of these payments. Also, petitioner received an additional amount of at least $2,000 in cash from Kelly as a means of dividing the non-cash assets of the liquidated corporation. Immediately after the 13 March 4, 1957 distributions by the transferor to petitioner and Kelly, there remained no assets of value belonging to the transferor other than the remaining balances of two bank accounts in the amount of $2,440.52. This amount was apparently left behind to pay outstanding current obligations of the corporation. As to the liquor license of Rolling Inn, Inc. no cogent evidence was introduced that it was a salable item or that any appreciable value was attached to it by the stockholders. Indeed, the license was never transferred from the corporation to anyone. Further, the liquor license to be issued to Rolling Restaurant, Inc., the new corporation, was conditioned upon several events, none of which was a transfer of the license of Rolling Inn, Inc. Notably, after the March 4, 1957 transfers *100 to the shareholders, no additional assets of the transferor ever came into existence, either as further payments from the State Roads Commission or in any other form. Respondent has proved that after simultaneous distributions of $10,000 in cash to each of the shareholders of Rolling Inn, Inc., D'Agostino departed from the business leaving a total of $2,440.52 in corporate funds to pay an income deficiency of 14 $12,339.92 and resulting addition to tax. The corporation had this obligation for Federal income tax even though its final return showing the liability may not have been filed at the time of the distribution. In determining whether Rolling Inn, Inc. was insolvent at the time of transfer, its liability for Federal income tax, even if unknown or contingent, must be taken into consideration. J. Warren Leach, 21 T.C. 70 (1953). The transferee is retroactively liable for the transferor's taxes in the year of transfer, in addition to the addition to tax in connection therewith, to the extent of the assets received by him, even though the transferor's tax liability *101 was unknown at the time of the transfer. Helen R. Albert, 56 T.C. 447, 451 (1971). We reject petitioner's contention that Kelly had purchased his interest in the corporation and that Kelly had continued to operate the corporation's business after March 4, 1957. Even if this contention were supported by the record, it has little, if any, relevance to petitioner's liability. That is, even if the corporation had continued to operate for several months after March 4, 1957, it had insufficient assets with which to pay its accrued Federal tax liability immediately after the transfers and at all times subsequent thereto. Petitioner stresses that after 15 March 4, 1957, he never went near the premises of Rolling Inn, Inc., nor until the time of the instant trial ever saw or spoke to Kelly. The only significance this fact has is to further emphasize that petitioner had no personal knowledge as to the fate of the corporation after March 4, 1957. Much of petitioner's testimony seeking to establish his version of the events of February and March, 1957 is vague and unconvincing. Although D'Agostino attempted to be candid in his testimony, much of his testimony evolved *102 from mere impressions rather than from personal knowledge and clear recollection. Petitioner testified that he thought Kelly was to buy him out because the bookkeeper had made such an offer on his behalf. However, Kelly testified that he had never authorized the bookkeeper or anyone else to make such an offer on his behalf. Regardless of what petitioner's view of the transaction was, the crucial facts remain that checks were simultaneously drawn on the corporation's bank account in favor of D'Agostino and Kelly and such amounts were paid from corporate assets which should rightfully have been retained to satisfy accrued Federal tax liabilities. 16 Viewing the record in its entirety, we hold that respondent has demonstrated that petitioner is liable as a transferee of the assets of Rolling Inn, Inc., to the extent of $9,291.89, plus interest, for the deficiency in income tax of that corporation. Accordingly, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 6901. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) Income, Estate, and Gift Taxes. - (A) Transferees. - The liability, at law or in equity, of a transferee of property - (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes), * * * (h) Definition of Transferee. - As used in this section, the term "transferee" includes donee, heir, legatee, devisee, and distributee, * * * ↩