JANE S. LANGSTON, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Langston v. Commissioner
Docket Nos. 7692-71, 7694-71, 7696-71, 10016-74, 10017-74.
United States Tax Court
T.C. Memo 1977-421; 1977 Tax Ct. Memo LEXIS 19; 36 T.C.M. (CCH) 1703; T.C.M. (RIA) 770421; December 12, 1977, Filed Ruble G. Langston and Jane *20 S. Langston, for the petitioners. John D. Copeland, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent initially determined the following deficiencies in Hanover Manufacturing Company, Inc.'s Federal corporation income taxes (without taking into account possible net operating loss carrybacks): Additions to tax
Sec.
Sec. Year
Deficiency
[2] 6651(a) 6653(b)
1965
$ 2,161.56
$1,080.78
1966
11,721.00
5,860.50
1967
59,859.00
$14,965.00
1968
310.00
78.00
1969
323.00
81.00
By answer and amended answer, respondent alleged that the correct deficiencies and additions to tax for the taxable years 1965 and 1966 are as follows: Additions to tax
Sec.
Sec.
Sec. Year
Deficiency
6651(a)
6653(a)
6653(b)
1965
$ 8,201.61
$2,050.40
$ 410.08
$ 4,100.81
1966
35,320.83
8,830.21
1,766.04
17,660.42
Respondent further asserted that Jane S. Langston and Respondent further asserted that Jane *21 S. Langston and Ruble G. Langston were liable as transferees in respect of the above-stated deficiencies and additions to tax. The issues for decision are: (1) Whether Hanover Manufacturing Company, Inc., is entitled to deductions for its excise tax liabilities for each of the years in issue. (2) Whether any portion of the underpayment in corporate tax for 1965 and 1966 was due to fraud or, in the event we hold for Hanover Manufacturing Company, Inc., on this issue, whether it is liable for additions to tax under sections 6651(a) and 6653(a). (3) Whether, and to what extent, Jane S. Langston and Ruble G. Langston are liable as transferees of Hanover Manufacturing Company, Inc.
FINDINGS OF FACT Hanover Manufacturing Company, Inc. (Hanover or petitioner) is a Texas corporation having its place of business in Bryan, Texas, during the taxable years in question. No corporate income tax returns were filed by or on behalf of Hanover for the taxable years 1965 through 1970 until November 1971. Ruble G. Langston (Ruble) and Jane S. Langston (Jane) are husband and wife. They resided in Bryan, Texas, at the time the petitions herein were filed. Hanover was incorporated *22 in 1963, at which time Ruble owned 51 percent of its outstanding stock. John D. Cowsar served as president and as a director of Hanover until September 1964, when Ruble acquired additional shares of Hanover, bringing his ownership to 97 percent of its outstanding stock. From then on, and throughout the taxable years in question, Ruble and Jane have been in complete control of the corporation's management and operation. Earl Smythe, Jr. (Smythe) was retained by Cowsar in the summer of 1964 to perform accounting work for Hanover. At that time, the corporation had no formal books of account and it had not yet filed its United States corporation income tax return for 1963. Smythe set up a double entry system of accounting to meet Hanover's needs and prepared Federal income tax returns for 1963 and 1964, which were the only such returns he prepared. The books of account were kept and tax returns were prepared on an accrual basis. After Cowsar left Hanover, Smythe worked primarily with Jane. Throughout the years in issue, Jane handled the bookkeeping for Hanover. Initially, "her knowledge of accounting and bookeeping was nil practically." However, with Smythe's assistance, she *23 learned how to maintain Hanover's books of account. Smythe's employment as Hanover's accountant was terminated in 1965. In September 1966, Jack A. Gregory (Gregory), a revenue agent for respondent, contacted Jane and told her that he planned to conduct an examination of Hanover with regard to its excise tax liability. She indicated that petitioner's records were in the possession of its accountant and that she would need time to obtain them. Thereafter, Gregory made several attempts to arrange an appointment to examine Hanover's books, but no appointment could be set up until January 18, 1967. At this meeting, Gregory requested to see, among other records, petitioner's 1965 corporation income tax return. Jane informed him that the accountant had that return. At that time, no such return had been prepared and Jane was aware of that fact. Except for this, and the difficulty in arranging the initial examination, Jane cooperated fully with respondent's agents. Revenue Agent Harold L. Boedecker (Boedecker) investigated petitioner's United States corporation income tax liability. In the course of investigation, he used petitioner's ledger, cash receipts and disbursements journal, *24 and invoices to determine petitioner's taxable income for 1965 and 1966. Although some of the invoices were incorrectly recorded in the journal, and some were not recorded at all, Boedecker was able to calculate petitioner's tax liability with very little difficulty using records provided by petitioner. The records shown to Boedecker were reasonably complete. Ruble and Jane were indicted on the following criminal charges: filing false and fraudulent excise tax returns; wilful failure to file excise tax returns; wilful failure to file United States Federal Insurance Contribution Act tax and withholding tax returns; and wilful failure to file corporation income tax returns. They each entered a plea of guilty to the charge of wilful and knowing failure to file a corporation income tax return for Hanover for the calendar year 1965 and to two counts of wilful and knowing failure to file employer's quarterly Federal tax returns. Petitioner's corporation income tax returns for the years 1965 through 1969 were not timely filed. For each such year, petitioner's officers were aware of the obligation to file such returns on petitioner's behalf and they knowingly failed to do so. Their *25 failure to file such returns for 1965 and 1966 was based upon their belief that petitioner lacked the liquid assets with which it could pay its tax liability. Hanover issued numerous checks payable to the order of Ruble and/or Jane. Written or typed on the face of such checks were notations such as "September Rent," "Salary," "Reimbursement for postage paid by Ruble Langston personally," "Back Salary." "Travel expense advanced," "Payment of Note," and "Loan." For the years 1965 through 1967, checks bearing notations indicating rent, salary, reimbursements, travel advances, and other items totaled as follows: Reimbursement
or Year
Rent
Salary
[1] advances Other
Total
1965
$5,000.00
[2] $15,881.94 $1,476.94
$ 3,500.00
$ 25,858.88
1966
1,500.00
1,637.03
61,223.10
64,360.13
1967
5,000.00
5,000.00
Total
$95,219.01
*26 Petitioner accrued on its books an account payable for the rental payments due but not paid on property leased from Jane and Ruble. The amounts accrued but not paid are as follows: Year
Amount
1963
$ 150.00
1964$61965
1,000.00
1966
2,000.00
1967
6,500.00
1968
3,000.00
1969
3,750.00
1970
2,000.00
1971
(400.00)
$18,000.00
During the years 1965 through 1969, Ruble and/or Jane issued checks payable to Hanover, or for the benefit of Hanover, in the following amounts: [3]
Amount
Amount
payable
for
to
Hanover's Year
Hanover
benefit
Total
1965
$ 7,000.00
$ 702.69
$ 7,702.69
1966
11,200.00
1,355.00
12,555.00
1967
22,813.24
1,181.07
23,994.31
1968
83,950.25
[1] 2,508.31 86,458.56
1969
11,000.00
[2] 1,392.16 12,392.16
$143,102.72
*27 In addition to such checks, cash in the amount of $48,860 was deposited in Hanover's bank accounts in 1971. By agreement dated August 10, 1966, Tommy J. Hines (Hines) agreed to sell 479 acres of land (hereinafter referred to as the Mineola Ranch) to Ruble as purchaser. The agreed purchase price was $95,800. Title to the ranch was recorded in the names of Ruble and Jane on March 1, 1967. AMemorandum to the Corporate Records of Hanover, dated March 10, 1967, prepared by Ruble and Jane, specified that the ranch, although held in the name of Ruble and Jane, belonged to Hanover. Financial statements were prepared for Hanover by Jane for submission to banks which were creditors of petitioner. The statements for the period subsequent to the recording of title of the Mineola Ranch consistently include it as a corporate asset. [4]
Hanover transferred corporate assets to Hines to pay a vendor's lien securing a deed *28 of trust in the amount of $55,360 which had been delivered as part of the purchase price of the Mineola Ranch. By agreement dated September 14, 1965, Shelby R. Bigden agreed to transfer all of his rights (including one pilot model) in an invention called "Tilt-lift trailer," for which an application for Letters Patent had been filed, to Hanover. In consideration thereof, Hanover agreed to pay Bigden $2,000 cash, a promissory note, and three 20-foot trailers (which petitioner sold at that time for $1,395 per trailer). The total consideration paid by Hanover for the patent and the pilot model was $7,462.63. Bigden assigned his rights in the patent to Ruble personally. During 1967, 1968, and 1969, Hanover owned approximately 51 percent of the stock of a Canadian corporation known as Hanover Manufacturing Company of Canada, Ltd. (Canada). Ruble owned between 51 and 55 percent of the stock of a corporation known as Hanover Modular Homes International (Homes), which, in turn, owned virtually all of the stock in Hanover Modular Homes, Bryan (Bryan), Hanover Modular Homes, Taft (Taft), and Hanover Modular Homes, Texas City (Texas City). In late 1969 or early 1970, Homes and its subsidiaries *29 were merged into a publicly held corporation known as Phelan Sulphur Company, whose name was subsequently changed to International Shelters, Inc. During the years 1968, 1969, and 1970, petitioner purchased certain items for the benefit of some of the above-mentioned companies. Petitioner then prepared a sales invoice for the items and charged the costs thereof to the appropriate company. In certain instances, petitioner wrote off the accounts receivable corresponding to such sales invoices at the end of a taxable year. The following table indicates the total of sales invoices in the specified year and the year in which that amount was written off. [5]
Year of
Amount of
Year of Corporation
purchases
purchases
write-off
Bryan
1968
$71,104.00
1968
1969
68,211.00
1969
1970
57,177.93
1970
Canada
1967
23,813.74
[1] 1969 1968
5,195.68
[1] 1969 1970
1,485.00
*30 Hanover filed Federal excise tax returns for the first three quarters of 1965 and paid the aggregate amount of $4,654.54 shown to be due thereon. Thereafter, it filed no such returns until October 25, 1971, at which time it filed Federal excise tax returns for the last quarter of 1965 and all four quarters of 1966 showing zero liability. On the same day, it filed Federal corporation income tax returns for the taxable years 1965 through 1970 in which it claimed the following deductions for Federal excise taxes: Deduction Year
claimed
1965
$23,194
1966
49,166
1967
50,159
1968
1969
Each of those Federal income tax returns also showed no taxable income after the allowance of net operating loss carrybacks and carryforwards. [6] In the deficiency notice for the taxable years 1965 and 1966, respondent originally allowed deductions for accrued Federal excise tax liabilities in the amounts of $23,193.67 in 1965 and $49,166.31 in 1966. By way of amended answer, respondent has sought increased deficiencies based upon limiting the deduction to the $4,654.54 paid in 1965. In the deficiency notice for the taxable year 1967, respondent allowed no deduction *31 for Federal excise taxes. Some payments having been made subsequent to 1969, Hanover filed claims for refund of all excise taxes paid for the years 1965 through 1969, which were denied. Hanover then filed suit in United States district court for refund of the Federal excise taxes paid. OPINION 1. Deficiencies
Respondent determined deficiencies in petitioner's corporation income tax for the taxable years 1965 through 1969. By amendment to answer, respondent claimed increased deficiencies for the years 1965 and 1966, based upon the disallowance of deductions for Federal excise taxes. The burden is on petitioner with respect to all disputed items, except in respect to matters related to the increase in deficiencies, as to which the burden of proof is on the respondent. Rule 142(a), Tax Court Rules of Practice and Procedure.
We are satisfied, on the basis of the entire record herein, that petitioner *32 has either abandoned or failed to sustain its burden of proof on all items related to the original deficiencies asserted for the taxable years 1965 through 1969. [7] The only item which requires discussion relates to the matter upon which the increase in deficiencies for the taxable years 1965 and 1966 is based, namely, the disallowance of the deductions for Federal excise taxes. The key question with respect to the deductibility of taxes is whether the liability therefor is contested or, if contested, the requirements of section 461(f), including the requirement of payment, have been satisfied. Section 461(f) has no applicability to petitioner's taxable years 1965 and 1966 because, except with respect to $4,654.54 paid in 1965 which respondent concedes is deductible, no further payments were made prior to 1969 and section 461(f) permits deductions for *33 transfers in payment of contested liabilities only "for the taxable year of the transfer." Aside from section 461(f), the general rule is that a taxpayer who contests the imposition of a tax cannot deduct the amount of such tax until liability for the tax has been finally determined. Security Flour Mills Co. v. Commissioner,321 U.S. 281 (1944); Dixie Pine Products Co. v. Commissioner,320 U.S. 516 (1944); Gunderson Bros. Engineering Corp. v. Commissioner,16 T.C. 118 (1951).
Petitioner filed excise tax returns for the first three quarters of 1965 and paid the amounts shown to be due thereon.Not until 1971 were returns for subsequent periods in 1965 and 1966 filed by petitioner and those returns showed no tax due. Also, some time after 1969, petitioner filed claims for refund for all excise taxes paid for the years 1965 through 1969. We see no need to dwell upon the intricacies of what constitutes a "contest" for purposes of determining the deductibility of accrued tax liabilities. Compare Agency of Canadian Car & Foundry Co. v. Commissioner,39 T.C. 15, 29-30 (1962), *34 and Gunderson Bros. Engineering Corp. v. Commissioner,supra, with Dravo Corp. v. United States,172 Ct. Cl. 200, 348 F. 2d 542 (1965); Rev. Rul. 68-631, 1968-2 C.B. 198. See Lutz v. Commissioner,396 F. 2d 412 (9th Cir. 1968), revg. 45 T.C. 615 (1966). [8] We are satisfied, on the basis of the record herein, that respondent has carried his burden of proof that the Federal excise tax liabilities of Hanover were sufficiently contested during 1965 and 1966 so as not to permit any deduction therefor in excess of the $4,654.54 paid in 1965. In view of the foregoing, the deficiencies as determined by respondent for all the years at issue are sustained in full.
2.Additions to Tax for Fraud
Respondent determined that petitioner is liable for additions to tax for fraud as prescribed by section 6653(b) for the years 1965 and 1966. [9]The existence of fraud is a factual question to be determined upon consideration *35 of the entire record. Beaver v. Commissioner,55 T.C. 85 (1970). The burden of proving fraud is on respondent, and that burden must be carried by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Marsellus v. Commissioner,544 F. 2d 883 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Green v. Commissioner,66 T.C. 538, 549 (1976).To establish fraud, respondent must prove that "there has been an intentional wrongdoing with the specific purpose of evading a tax believed by the taxpayer to be properly owing." Gajewski v. Commissioner,67 T.C. 181, 199-200 (1976).
Petitioner admittedly failed to file tax returns for the taxable years in question and such failure to file was wilful in the sense that petitioner's *36 officers knew that the returns should have been filed. Such failure is some evidence of a fraudulent intent ( Powell v. Granquist,252 F. 2d 56 (9th Cir. 1958); Acker v. Commissioner,26 T.C. 107 (1956)), but, standing alone, it is insufficient to support a finding of fraud. Marsellus v. Commissioner, supra;First Trust & Savings Bank v. United States,206 F. 2d 97 (8th Cir. 1953); Beaver v. Commissioner,supra.
Respondent also focuses on one statement made to Gregory by Jane to the effect that a 1965 corporate income tax return had been filed. This statement, made in the context of an audit of petitioner's excise taxes, does not convince us that Jane was attempting to conceal the fact that petitioner had not filed such a return. [10]
*37 On the other hand, the evidence reveals that petitioner maintained reasonably adequate records and that its officers cooperated with respondent's agents in their audits (see Toledano v. Commissioner,362 F. 2d 243 (5th Cir. 1966), revg. in part on other grounds T.C. Memo. 1963-200) and intended to eventually pay any taxes that might be due. [11]
In short, we hold that respondent has failed to sustain his burden of proof on the issue of fraud for the taxable years 1965 and 1966. 3. Additions to Tax for Failure to File Tax Returns
Respondent determined that additions to tax for failure to file tax returns should be imposed pursuant to section 6651(a) for petitioner's taxable years 1965 through 1969. For the years 1965 and 1966, respondent first asserted this addition to tax in his answer (as an alternative argument in the event that he did not prevail on the fraud issue) and he bears the burden of proof for such years. Wilcox v. Commissioner,44 B.T.A. 373 (1941). For the remaining years, this determination was made in the notice of deficiency, *38 and the burden of proof is on the taxpayer. Rule 142(a), Tax Court Rules of Practice and Procedure.
Ruble and Jane each pleaded guilty to a criminal charge of wilful and knowing failure to file petitioner's corporation income tax return for 1965.Although such a guilty plea can serve as the basis for a defense of collateral estoppel for the year 1965 ( Gemma v. Commissioner,46 T.C. 821, 833-834 (1966)), such a defense must be affirmatively pleaded (Rule 39, Tax Court Rules of Practice and Procedure). Petitioner asserted, in his reply, that the failure to file was due to reasonable cause, and respondent has not, in his answer or pleadings, raised the defense of collateral estoppel. In such circumstances, the defense is not available to him. Jefferson v. Commissioner,50 T.C. 963, 966-967 (1968). From the numerous memoranda dictated by Ruble, typed copies of which were placed in petitioner's corporate records, we are left with the firm belief that petitioner's officers understood that petitioner was obligated to file corporate income tax returns and *39 that (at least for the years 1965 and 1966) the basis for non-filing was their belief that petitioner did not have sufficient resources to pay its tax liability. This does not constitute reasonable cause for failure to file. Jones v. Commissioner,25 T.C. 1100, 1105-1106 (1956), revd. on other grounds 259 F. 2d 300 (5th Cir. 1958). See section 301.6651-1(c)(1), Proced. & Admin. Regs. [12] In view of the foregoing and on the basis of the record as a whole, we are satisfied that respondent has sustained his burden of proof. For the years 1967, 1968, and 1969, petitioner failed to introduce any evidence which would establish that it had reasonable cause for not filing its tax returns in a timely manner.Consequently, it has failed to sustain its burden of proof. We hold that petitioner is liable for the addition to tax under section 6651(a) for failing to file timely returns without reasonable cause for each of the years 1965 through 1969. 4. Additions to Tax for Negligence
*40 Respondent also asserted in his answer that petitioner is liable for additions to tax under section 6653(a) for the years 1965 and 1966. The burden of proof on this issue is on respondent.Rule 142(a), supra. As we have indicated heretofore, petitioner intentionally and without reasonable cause failed to file timely corporation income tax returns for such years. In addition, it failed to record certain invoices in its books and it incorrectly recorded other invoices.We are satisfied, on the basis of the entire record herein, that respondent has sustained his burden of proof and that imposition of the addition to tax for negligence, in addition to that for wilful failure to file, is appropriate in this case. See Birmingham Business College v. Commissioner,276 F. 2d 476 (5th Cir. 1960), affg. on this issue T.C. Memo. 1958-166; Robinson's Dairy, Inc. v. Commissioner,35 T.C. 601, 609 (1961), affd. 302 F. 2d 42 (10th Cir. 1962). 5. Transferee Liability
Respondent alleges that Jane and Ruble are liable as transferees for the deficiencies and the additions to tax and interest thereon for the taxable years *41 involved herein. Section 6901. Respondent has the burden of proof on this issue. Section 6902. Once it is established that the petitioner transferred assets to the alleged transferees after liability for taxes had accrued, at which time petitioner was (or as a result of which it is rendered) insolvent, respondent has established a prima facie case of transferee liability. In such circumstances, the burden of going forward shifts to the alleged transferees to produce evidence to show that they should not be held liable. Nau v. Commissioner,27 T.C. 999 (1957), revd. in part on other grounds 261 F. 2d 362 (6th Cir. 1958); Gobins v. Commissioner,18 T.C. 1159, 1169 (1952), affd. per curiam 217 F. 2d 952 (9th Cir. 1954); Powers Photo Engraving Co. v. Commissioner,17 T.C. 393 (1951). Petitioner issued checks to Ruble and/or Jane during the years 1965 through 1967 totaling $95,219.01. Because we conclude that amounts subsequently transferred from Ruble and Jane to petitioner more than offset these transfers, *42 we need not decide the extent to which petitioner received full and adequate consideration for them. Respondent contends that petitioner transferred assets to Ruble and Jane through its payments on the purchase price of the Mineola Ranch. Title to the ranch was taken in the name of Ruble and Jane, but, as our findings of fact show, the property was held solely for petitioner's benefit. Based on the record before us, we conclude that respondent has failed to establish that petitioner made any transfer to Ruble and Jane in connection with the Mineola Ranch. Petitioner expended $7,462.63 with regard to the tilt-lift patent, which was assigned to Ruble. On brief, Ruble argues that he subsequently reassigned the patent to petitioner. Evidence of such a retransfer is totally lacking, and we sustain respondent's determination that Ruble is a transferee of the amount expended by petitioner for the patent. The final group of transfers, alleged by respondent as giving rise to transferee liability, concerns expenditures made by petitioner for the benefit of other corporations. As far as can be discerned from petitioner's records, these expenditures were treated as accounts receivable *43 owing from the other corporations which were never collected by petitioner. Respondent argues that this is sufficient to establish a constructive distribution from petitioner to Ruble. We disagree. Funds transferred by a corporation for the benefit of a shareholder, including transfers made to related corporations, can constitute constructive distributions to the shareholder. Sammons v. United States,433 F. 2D 728 (5TH Cir. 1970); Cox v. Commissioner,56 T.C. 1270 (1971). For such a transfer to be treated as a constructive distribution, it must have actually benefited the shareholder. Rapid Electric Co. v. Commissioner,61 T.C. 232, 239 (1973); Rushing v. Commissioner,52 T.C. 888 (1969), affd. on other issues 441 F. 2d 593 (5th Cir. 1971). The absence of a valid business purpose for the transfer can support the conclusion that there was a constructive distribution. Joseph Lupowitz Sons, Inc. v. Commissioner,497 F. 2d 862 (3d Cir. 1974), affg. on this issue T.C. Memo. 1972-238; *44 Rushing v. Commissioner,supra.
We hold that respondent has failed to carry his burden of proof that either Ruble or Jane was a transferee, by virtue of having received constructive dividends, in respect of payments made by Hanover to (or accounts receivable written off for the benefit of) Bryan or Canada or any of the other corporations referred to in our findings of fact. As far as Bryan is concerned, the only evidence in the record is that the corporation into which Bryan merged became defunct or nonoperative as early as 1971. There was no showing that Ruble personally benefited, in his capacity as shareholder or otherwise, [13] from the Bryan transfers. With respect to Canada, it appears that that corporation may have distributed or assembled petitioner's products for sale in Canada, thereby indicating a business purpose for transfers to Canada. Moreover, Hanover owned 51 percent of the stock of Canada and the record is silent as to whether Ruble owned any of the remaining 49 percent. [14]
*45 In light of the foregoing, it appears that, at best, Ruble and Jane can be considered as transferees of property in the aggregate amount of $102,681.64, consisting of $95,219.01 in checks and $7,462.63 representing payments by petitioner in respect of the tilt-lift patent. [15]
Assuming, without deciding, for the purposes of decision herein, that such transfers were made without consideration, it is clear that Ruble and Jane are entitled to offset against such transfers the amounts subsequently re-transferred by them to petitioner prior to the issuance of the deficiency notices herein on August 27, 1971 and October 4, 1974. See Ginsberg v. Commissioner,35 T.C. 1148 (1961), affd. *46 305 F.2d 664 (2d Cir. 1962); Gobins v. Commissioner,supra. Our findings of fact show that the aggregate amount of such re-transfers during the taxable years 1965 through 1969 was $143,102.72, an amount clearly in excess of the $102,681.64. [16]
In view of the foregoing, and giving respondent the benefit of any presumptions to which he might be entitled under Texas law, [17] we are satisfied that Ruble and Jane should not be held liable as transferees of Hanover. *47 Decisions will be entered for the petitioners in docket Nos. 7692-71, 7696-71, and 10017-74. Decision will be entered for the respondent in docket No. 10016-74. Decision will be entered under Rule 155 in docket No. 7694-71. Footnotes
1. Cases of the following petitioners are consolidated herewith: Hanover Manufacturing Company, Inc., docket Nos. 7694-71, 10016-74; Ruble G. Langston, docket No. 7696-71; Ruble and Jane S. Langston, docket No. 10017-74.↩
2. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.↩
1. Travel advances and reimbursements for expenses purportedly paid personally by Ruble. ↩
2. Includes one check in the amount of $4,950.00, dated February 26, 1965, which contains the notation "Back salary for 1964," and one check in the amount of $4,200.00, dated June 18, 1965, which bears the notation "Back Salary November 15, 1964 to June 15, 1965 $600.00 per month."↩
3. Petitioners submitted copies of numerous other checks and claim that such checks represent payments made on behalf of Hanover. The notations written thereon are not sufficient to indicate that such checks were issued for Hanover's benefit.↩
1. Includes one check dated October 10, 1968, in the amount of $1,372.16, which bears the notation "Interest Mineola Ranch Loan." ↩
2. Consists of one check, dated May 6, 1969, which bears the notation "Interest on Mineola Land Note." ↩
4. The balance sheets contained in the tax returns iled by Hanover did not list any "land" as an asset, but there is evidence of record that the ranch was included as an asset on such balance sheets under the heading "Buildings and other fixed depreciable assets."↩
5. For certain years, accounts receivable owing by some of these corporations remained unpaid, but petitioner made no formal adjustment to its books to indicate that they were being written off.↩
1. The accounts receivable included in these figures were offset in petitioner's books by a debit to purchases in the amount of $28,990.00.↩
6. Hanover's returns for 1963 and 1964 showed net operating losses without regard to any carrybacks or carryforwards. For 1965, respondent allowed a net operating loss carryforward of an amount in excess of the net operating losses shown on the 1963 and 1964 returns.↩
7. On brief, petitioner argues that testimony from a related action in a United States district court shows that respondent's determination is in error. Even were this testimony properly introduced into evidence (which it was not), the conclusory statements contained therein would be inadequate to satisfy petitioner's burden.↩
8. See also Amco Electric Corp. v. Commissioner,T.C. Memo. 1974-194↩.
9. Section 6653(b) provides in relevant part: SEC. 6653(b)↩. Fraud.--If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.
10. At the trial, respondent attempted to introduce evidence of the failure of petitioner to file other Federal tax returns. Although we recognize that a consistent pattern of nonpayment of numerous tax obligations can indicate a fraudulent intent (see United States v. Magnus,365 F. 2d 1007 (2d Cir. 1966); United States v. Taylor,305 F. 2d 183↩ (4th Cir. 1962)), we would not have reached a contrary result herein even if we had allowed evidence of petitioner's failure to file Federal excise tax returns to be introduced.
11. See DePumpo v. Commissioner,T.C. Memo. 1971-115↩.
12. See also Nelson v. Commissioner,T.C. Memo. 1974-239↩.
13. Ruble was only indirectly a shareholder of Bryan through the ownership of between 51 and 55 percent of the stock of Homes, which, in turn, owned virtually all the stock of Bryan. ↩
14. In the context of this case, we need not concern ourselves with the troublesome questions, in the area of constructive dividends, relating to the proper standard for measuring business purpose and the treatment of distributions from a parent corporation to a subsidiary. See Kuper v. Commissioner,533 F. 2d 152 (5th Cir. 1976), affg. in part and revg. in part 61 T.C. 624 (1974); Sammons v. Commissioner,472 F. 2d 449 (5th Cir. 1972), affg., revg., and remanding T.C. Memo. 1971-145↩.
15. We have made no reference in either our findings of fact or opinion to an item of $3,200 which respondent claims was expended by petitioner for the concrete blocks used in a building on land owned by Ruble and Jane because the evidence falls far below that necessary to sustain respondent's burden of proof that Ruble and Jane were transferees of this amount. But, even if we held that respondent had carried his burden of proof on this item, it would not change the result.↩
16. Conceivably, the cut-off date might be the issuance of the 30-day letter, but it was incumbent upon respondent to introduce evidence of such date. This he did not do. In any event, it seems highly unlikely that such 30-day letter was issued prior to the end of 1968 and, even if we confined our analysis to re-transfers by Ruble and Jane prior to the end of that year (amounting to $130,710.56), respondent would not prevail. We also note that, in view of our analysis, it is unnecessary for us to decide whether Ruble and Jane should be given credit for other items.↩
17. See Rules 302, 1101(d), and 1101(e), Federal Rules of Evidence. Cf. Pierce v. Commissioner,61 T.C. 424, 432-433 (1974); Albert v. Commissioner,56 T.C. 447↩ (1971).